The defendant was convicted by a Superior Court jury of three counts of aggravated rape in violation of G. L. c. 265, § 22(a ). On appeal, the defendant maintains that telephonic text messages he sent to one of his codefendants[2] were erroneously admitted, and that the judge erred when she gave a consciousness of guilt instruction regarding the contents of the text messages. We affirm.
Joint venture. On the evening of October 12, 2012, four young men, the defendant and his three codefendants, left Pittsfield to visit an acquaintance, J.D.,[3] a freshman at the University of Massachusetts (UMass).[4] Before they left, they exchanged text messages in which they discussed who would "take" J.D., buy alcohol, and "finish." As a result of their conduct in the early morning of October 13, 2012, all four were charged with raping J.D. in her dormitory room.
Later that morning, J.D. texted one of the codefendants and demanded $500 or she would "tak[e them] all to court." She also texted, "Pay me or go to fucking jail." In the text message conversation that followed between the defendant and one of his codefendants, the defendant texted as follows: "We need to get rid of this problem as fast as possible"; "People know"; "So basically we pay or we are fucked"; and in response to information that one of the other codefendants did not want to pay, "Soooo.... [sic ] they wanna [sic ] go to jail?" The defendant testified at trial that he responded to the demand because he "would rather pay the money th[a]n go through all this," and that he did not want J.D. to "[t]ell the police that we raped her."
"We recognize an exception to the hearsay rule whereby statements of joint venturers are admissible against each other if the statements are made both during the pendency of the cooperative effort and in furtherance of its goal." Commonwealth v. Rakes, 478 Mass. 22, 36 (2017) (quotation omitted). The defendant maintains that the text messages exchanged after the incident were irrelevant and inadmissible because any joint venture had ended by the time the messages were sent.
The judge did not abuse her discretion in finding that the joint venture continued to exist at the time those text messages were sent.[5] See Commonwealth v. Winquist, 474 Mass. 517, 521 (2016). "Statements made in an effort to conceal a crime, made after the crime has been completed, may be admissible under the joint venture exception because the joint venture [remains] ongoing, with a purpose to ensure that the joint venture itself remains concealed." Id. at 522, quoting from Commonwealth v. Carriere, 470 Mass. 1, 11 (2014). The text messages-sent within days of the rapes-were not hearsay because they were "part and parcel of their ongoing joint venture to [commit the rapes] ..., to conceal their involvement in the crimes, and to avoid detection and arrest."[6] Winquist, supra at 525. "Recalling the reasoning behind the joint venture exception," the text messages themselves amply demonstrate that the defendant and the codefendant continued to "share the commonality of interests which [supplies the] assurance that their statements are reliable." Rakes, supra at 41 (quotation omitted).
Consciousness of guilt. The defendant asserts that it was error for the judge to give a consciousness of guilt instruction because the evidence was too weak and ambiguous to support the instruction, in that the text messages failed to show that the defendant knew he had committed a crime, as opposed to a "mere wrong." We review a judge's decision to instruct on consciousness of guilt for an abuse of discretion. Commonwealth v. Cole, 473 Mass. 317, 326 (2015).
"A consciousness of guilt instruction may be given where 'there is "an inference of guilt that may be drawn from evidence of flight, concealment, or similar acts," such as false statements to the police, destruction or concealment of evidence, or bribing or threatening a witness.' " Commonwealth v. Indrisano, 87 Mass. App. Ct. 709, 718 (2015), quoting from Commonwealth v. Stuckich, 450 Mass. 449, 453 (2008). Here, the judge did not abuse her discretion in instructing the jury regarding consciousness of guilt. See Cole, supra. As a preliminary matter, contrary to the defendant's assertion, the text message conversation between the defendant and the codefendant is clearly relevant because it shows the defendant's plan to conceal evidence by paying J.D. money in order to persuade her not to report the rapes.
Nevertheless, the defendant contends that the judge's reference to the text message conversation in the consciousness of guilt instruction was erroneous because the prosecution "did not show that the defendant and [the codefendant] knew at the time ... that they had in fact committed a crime."[7] There was ample evidence, including the text messages and testimony described above, to permit the fact finder to infer that the defendant was aware that his conduct could result in criminal charges. The text message conversation revealed a prevailing fear between the defendant and at least one codefendant that criminal charges could result if they did not pay. Moreover, the defendant testified that he wanted to pay J.D. so he would not be "accused or be prosecuted"; that he knew why the police arrived at his house after the rapes occurred; and that he knew that J.D. might go to the police if he did not pay her. The jury reasonably could infer that the defendant intended to pay J.D. in an attempt to conceal evidence of the crimes, an act suggestive of consciousness of guilt. See Cole, supra at 325. See also Commonwealth v. Boyden, 9 Mass. App. Ct. 857, 857-858 (1980) (evidence that defendant paid the victim "to induce him not to testify" was properly admitted).
Judgments affirmed.

The defendant and three codefendants were tried separately.

A pseudonym.

J.D. had told them not to visit. They did so anyway.

"A joint venture is established by proof that two or more individuals 'knowingly participated in the commission of the crime charged ... with the intent required for that offense.' " Commonwealth v. Bright, 463 Mass. 421, 435 (2012), quoting from Commonwealth v. Zanetti, 454 Mass. 449, 466 (2009).

While assessing their exposure to criminal charges, the defendant and his codefendant also discussed whether the halls at UMass had cameras.

The judge instructed the jury as follows: "You heard evidence as well that [the defendant] may have been amenable to paying money requested by [the victim] to prevent her from speaking to the authorities ... in an effort to conceal the evidence of the offense.... Now, if the Commonwealth has proved that the defendant did any of those, you may consider whether such actions indicate feelings of guilt by [the defendant] and whether, in turn, such feelings of guilt might tend to show actual guilt on the charges here."