COMMONWEALTH *vs.* RICHARD DUNNINGTON.

Plymouth.  September 12, 1983. — November 22, 1983.

Present: WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Larceny. Practice, Criminal,* Complaint, Deliberation of jury, "Two-tier" court system. *Jury and Jurors. Constitutional Law,* Double jeopardy.

At the trial of a defendant charged with larceny by check, evidence with respect to the existence of the elements of the crime charged, including evidence establishing the defendant's intent to defraud, was sufficient to warrant denial of his motion for a required finding of not guilty. [474-476]

There was no error in the allowance of a pretrial motion to amend a complaint charging larceny by check by substituting November 17, 1980, for November 7, 1980, as the alleged date of the larceny where the record revealed that the defendant was aware at all times that the complaint concerned the issuance of a check on November 17, 1980. [476-477]

The judge who had presided at a criminal trial committed no error in summarily denying the defendant's motion for a new trial based on a court officer's affidavit tending to show that the jury, in their deliberations, had considered factual assertions not properly before them, where the record warranted the judge's implicit finding that the defendant had failed to demonstrate the jury's exposure to extraneous matter. [477-479]

On a defendant's appeal from his conviction at a trial de novo in a District Court jury session, following his initial conviction at a bench trial, this court did not address the defendant's claims that the original conviction should be reversed on the ground of insufficient evidence and that consequently a trial de novo was barred by double jeopardy principles, where the bench trial record was inadequate to permit such review, and where the defendant, by not filing a motion to dismiss prior to the commencement of the trial de novo, had failed to preserve his right to raise these claims on appeal. [479]

COMPLAINT received and sworn to in the Fourth Plymouth Division of the District Court Department on March 13, 1981.

On appeal to the jury session the case was tried before *Champagne, J.*

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Thomas P. Gay* for the defendant.

*Robert M. Payton*, Assistant District Attorney, for the Commonwealth.

NOLAN, J. On September 16, 1981, the defendant, Richard Dunnington, was convicted of larceny by check under G. L. c. 266, § 37, at a bench trial in the Wareham District Court. The defendant exercised his right to a de novo trial and on March 19, 1982, a jury of six found him guilty as charged. The defendant appealed to the Appeals Court and we transferred the case to this court on our own motion.

The defendant appeals his conviction on four grounds: (1) the denial of his motion for a required finding of not guilty under Mass. R. Crim. P. 25, 378 Mass. 896 (1979); (2) the allowance of the Commonwealth's motion to amend its complaint, (3) the denial of his motion for a new trial based on jury misconduct; and (4) the asserted violation of the defendant's right to protection against double jeopardy. We see no merit in the defendant's contentions and affirm the conviction.

Since the defendant challenges the sufficiency of the Commonwealth's evidence, we shall review the facts introduced by the Commonwealth in the light most favorable to the Commonwealth. On October 4, 1980, the defendant, an employee of Dunnington Marine, Inc. (Dunnington Marine), represented himself as president of Dunnington Marine and placed an order with North American Fiberglass Corporation of Greenville, North Carolina (North American), for the purchase of five boats. The five boats were delivered to Dunnington Marine on November 17, 1980.

On that day the defendant requested that his secretary draw a check for payment in the amount of $19,508.25. The account at this time was overdrawn by $58.75.

The check was presented for payment at the drawee bank on November 26, 1980, and returned for insufficient funds. On November 28, 1980, Edwin Parsons, the New England sales representative for North American, informed the defendant by telephone, that the "check didn't work." The defendant promised he would deposit sufficient money to cover the check by the end of the following week.

At a scheduled meeting on December 1, 1980, Parsons again informed the defendant that the "check didn't work." The defendant again promised Parsons that he would cover the check by the end of the week. During this meeting a telephone call was made to the president of North American who told Parsons, "Well, under the circumstances, I guess we'll just have to wait until the end of the week until he puts the money in the bank."

Subsequently, North American retained Attorney George Decas to represent it in this matter. During December, 1980, Mr. Decas mailed two letters to the defendant informing him of the check's dishonor. The first he sent by certified mail and the second he sent through regular mail. The certified letter was returned uncollected and unclaimed, while the other was never returned. On January 7, 1981, Mr. Decas mailed a certified letter to the defendant which George Dunnington, the defendant's father, signed for and received. Again on February 4, 1981, Mr. Decas presented the defendant's attorney with notice of dishonor at the show cause hearing concerning the present action. The check has never been honored.

1. *Motion for required finding of not guilty.* The defendant argues that the Commonwealth failed to prove each element of the offense of larceny by check under G. L. c. 266, § 37. In particular he asserts that the Commonwealth's evidence failed to establish the requisite intent to defraud. The defendant moved for a required finding of not guilty at the close of the Commonwealth's evidence and

again after the jury returned its verdict.[1] The trial judge denied both motions.

We affirm the denial of these motions. On this issue we consider only the evidence introduced up to the time the Commonwealth rested its case and the defendant first filed his motion for a required finding of not guilty.[2] See G. L. c. 278, § 11; *Commonwealth* v. *Kelley*, 370 Mass. 147, 150 (1976). The question raised by these motions is whether "there was sufficient evidence of the defendant's guilt to warrant the submission of the [case] to a jury." *Commonwealth* v. *Altenhaus*, 317 Mass. 270, 271 (1944). In answering this question, this court must consider whether "there was enough evidence that could have satisfied a rational trier of fact of each . . . element beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979). We conclude that the Commonwealth introduced sufficient evidence of the elements of the crime.

General Laws c. 266, § 37, provides that "[a]s against the . . . drawer" of a dishonored check, the prosecution can establish a prima facie case of intent to defraud and knowledge of insufficient funds by showing that the drawer failed to pay the holder within two days after notice of dishonor. The Commonwealth's evidence established such a prima facie case.

The jury could infer notice of dishonor from numerous occurrences. First, Parsons testified that on November 28 and December 1, 1980, he informed the defendant that the

---

[1] The Commonwealth points out that the defendant did not renew his motion for a required finding of not guilty at the close of all the evidence. However, in order to raise the propriety of the trial judge's actions, the defendant is not required to renew his motion at the conclusion of his case. Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979).

[2] The Commonwealth's position as to proof did not deteriorate between the time the Commonwealth rested and the close of all the evidence so as to necessitate review of all the evidence. See *Commonwealth* v. *Kelley*, *supra* at 150 n.1. In fact the defendant's evidence aids the Commonwealth's case, because the defendant admitted both knowledge of insufficient funds and notice of dishonor.

"check didn't work." Since the statute does not require written notice, this evidence was sufficient for purposes of the prima facie case. See *Commonwealth* v. *Ohanian,* 373 Mass. 839, 842 (1977) (oral notice sufficient). Moreover, the evidence of Mr. Decas' repeated mailings was sufficient to permit the jury to infer that the defendant received notice through the ordinary course of mail or through oral communication with his father who received the certified letter mailed on January 7, 1981.

The defendant argues that the prima facie rule cannot be applied in the present case because he was not the actual drawer of the check. We do not agree. The defendant ordered his secretary to make out the check. This act was sufficient to render him the "drawer" for purposes of prima facie evidence. Cf. *Commonwealth* v. *Ohanian, supra* (defendant's signing of codefendant's name rendered him the "drawer" for purpose of the statutory rule).

In addition to the statutory prima facie case, the evidence revealed that on November 17, 1980, when the check was issued, the corporate bank account was overdrawn by $58.75. Since the defendant represented himself as president of the corporation and engaged actively in the purchase of inventory, the jury could infer that he had knowledge of this fact. Furthermore, the jury could draw an inference of intent to defraud from the defendant's unfulfilled and repeated promises to deposit funds in the corporate account by the end of the first week in December, 1980.

2. *Motion to amend complaint.* Prior to commencement of the trial de novo, the Commonwealth moved to amend the date of the offense charged on the complaint from November 7, 1980, to November 17, 1980, pursuant to Mass. R. Crim. P. 4 (d), 378 Mass. 849 (1979). The trial judge allowed this motion.

The question is whether the change of the date of the offense was a material change in the elements of the crime. *Commonwealth* v. *Ohanian, supra* at 843. *Commonwealth* v. *Jervis,* 368 Mass. 638, 643-644 (1975). Time is

not an essential element of the crime of larceny and there-
fore the amendment "offered was thus not one of
substance." *Commonwealth* v. *Jervis, supra* at 644.
*Commonwealth* v. *Glassman,* 253 Mass. 65, 71 (1925).

This case differs from *Commonwealth* v. *Ohanian,
supra,* where the essential elements of the crime were not
correctly stated. *Id.* at 843. The indictments in *Ohanian*
alleged that the defendants knew that the drawer had insuf-
ficient funds to pay the checks at a bank other than the
drawee bank. The indictments, in effect, failed to state an
offense under G. L. c. 266, § 37, which deals with knowl-
edge of insufficient funds at the drawee bank. Therefore,
the court reversed the denial of the defendants' motions to
dismiss the indictments and for directed verdicts on the
ground of variance between the allegations and proof, be-
cause the misnomer was material. G. L. c. 277, § 35. *Id.*

In the present case, the Commonwealth's amendment of
the date merely changed the form of the complaint. All the
elements of the crime remained in place. Moreover, the de-
fendant failed to demonstrate a substantial likelihood that
he was prejudiced in his defense. Mass. R. Crim. P. 4 (d).
The record reveals that at all times the defendant was fully
aware that the complaint concerned the issuance of a check
on November 17, 1980. Clearly, if the defendant were con-
victed of larceny by check on November 7, 1980, in regard
to the same circumstances, the Commonwealth would be
barred from prosecuting the defendant for the same offense
committed on November 17, 1980. See *Commonwealth* v.
*Snow,* 269 Mass. 598, 609-610 (1930).

3. *Motion for a new trial.* After the verdict was entered,
the defendant filed a motion for a new trial alleging that the
jurors considered evidence not admitted at the trial. The
defendant filed with this motion a court officer's affidavit
that he engaged in a postverdict conversation with a juror.
Allegedly the juror made three statements indicating possi-
ble extraneous influences.[3] The trial judge asked the

---

[3] These statements were as follows: (1) "His father owns five drug
stores and could have paid his way out of this if he wanted to"; (2) "He
had bounced four checks in the same month,—how do we know if there

juror whether the jury discussed any of these statements during deliberations. The juror recalled discussing only that statement concerning the prior overdrafts. The judge denied the motion for a new trial, making no express findings.

In Massachusetts, juror testimony is admissible at a hearing to impeach a jury verdict, but only to establish the existence of improper extraneous influences on the jury. This testimony is not admissible to demonstrate the effect that the extraneous matter had upon the juror's thought process. *Commonwealth* v. *Fidler,* 377 Mass. 192, 196 (1979).

The defendant at such a hearing bears the burden of demonstrating that the jurors were in fact exposed to extraneous matter. Once the judge finds that extraneous matter was introduced, the Commonwealth must prove beyond a reasonable doubt that the defendant was not prejudiced by the improper influence. *Commonwealth* v. *Fidler, supra* at 201.

We would have been materially aided if the judge had complied with the requirement of Mass. R. Crim. P. 30(b), 378 Mass. 900 (1979), which provides that "the trial judge shall make such findings of fact as are necessary to resolve the defendant's allegations of error of law." However, implicit in the judge's summary denial of the defendant's motion for a new trial, was a finding that the defendant failed to demonstrate that the jury was exposed to extraneous matter. The judge is best able to evaluate the weight and credibility of the evidence. There was no error. *Commonwealth* v. *Tavares,* 385 Mass. 140, 156 (1982). Since the evidence of overdrafts was properly before the jury[4] (see *Com-*

---

were more banks involved?"; and (3) "The only reason this is in court is that there is a bad feeling between them."

[4] Evidence of prior overdrafts was submitted to the jury in a bank statement introduced by the Commonwealth. The defendant did not object to the document's introduction in evidence, and, therefore, he will not be heard to complain on appeal. *Commonwealth* v. *Baptiste,* 372 Mass. 700, 706 (1977).

monwealth v. *Solari,* 12 Mass. App. Ct. 993 [1981]), and the juror emphatically asserted that the other two statements were not discussed during deliberations, the judge's denial of the motion does not leave us "with a firm conviction that a mistake has been committed." *Commonwealth v. Tavares, supra. New England Canteen Serv., Inc., v. Ashley,* 372 Mass. 671, 675 (1977).

4. *Claim of double jeopardy.* The defendant was initially tried in the District Court at a bench trial and convicted. He exercised his right to a de novo trial and was again convicted. He now asserts that the original conviction should be reversed on the ground of legally insufficient evidence. Assuming the validity of this claim, he also argues that his trial de novo placed him in double jeopardy under the holding of *Burks* v. *United States,* 437 U.S. 1, 18 (1978). The Court in *Burks* held that the double jeopardy clause of the Fifth Amendment of the United States Constitution precludes retrial of a defendant whose conviction has been reversed by an appellate court solely for insufficient evidence. *Id.*

While we are aware of the pendency of a case which highlights this issue in the United States Supreme Court, *Lydon* v. *Boston Mun. Court,* 698 F.2d 1 (1st Cir. 1982), cert. granted 463 U.S. 1206 (1983), we are not obliged to address the problem in the instant case because the defendant has produced a bench trial record that "is so deficient that we are in no position to rule on the sufficiency of the evidence."[5] *Commonwealth* v. *Montanez,* 388 Mass. 603, 604 (1983). Moreover, the defendant did not preserve his right to raise this issue on appeal. He neglected to file the proper motion to dismiss prior to the commencement of the trial de novo. See Mass. R. Crim. P. 13 (c) (2), 378 Mass. 873 (1979). "If there is a valid double jeopardy claim, it should be dealt with before, rather than after, the second trial." *Lydon* v. *Commonwealth,* 381 Mass. 356, 367, cert. denied, 449 U.S. 1065 (1980).

*Judgment affirmed.*

---

[5] The defendant bears the burden of producing a satisfactory record. See Mass. R. A. P. 18 (a), as amended, 378 Mass. 940 (1979); *Commonwealth* v. *Montanez, supra.*